T.C. Memo. 2003-194

UNITED STATES TAX COURT

EDWARD A. BOUGAS III, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13256-01.                    Filed July 2, 2003.

Edward A. Bougas III, pro se.

<u>Steven W. Ianacone</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GOLDBERG, <u>Special Trial Judge</u>:  Respondent determined a
deficiency in petitioner's Federal income tax for the taxable
year 1998 in the amount of $25,000.  Unless otherwise indicated,
section references are to the Internal Revenue Code in effect for
the year at issue.

The issue for decision is whether petitioner is liable for
the 10-percent additional tax under section 72(t) on a $250,000

early distribution from his individual retirement account (IRA).

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time the petition was filed, petitioner resided in Millburn, New Jersey.

Petitioner was married to Kathleen O. Bougas (Ms. Bougas) on December 27, 1969. On July 11, 1996, petitioner and Ms. Bougas were separated. On April 6, 1998, in a Dual Judgment of Divorce Incorporating Property Settlement Agreement (divorce judgment) filed in the Superior Court of New Jersey for Monmouth County (New Jersey court), petitioner and Ms. Bougas were ordered divorced.

The divorce judgment, inter alia, ordered petitioner to pay (1) a lump sum of $150,000 tax free to Ms. Bougas, (2) Ms. Bougas's credit card debt of $46,714.41 to various credit card companies, and (3) a $10,000 attorney's fee to Ms. Bougas's lawyer. Further, the divorce judgment contains a provision that petitioner's 401(k) and IRA accounts shall be his sole and exclusive property, free and clear of any claims by Ms. Bougas.

No provision exists in the divorce judgment dictating that petitioner must pay the ordered obligations from his IRA account. The divorce judgment did not provide for a specific source of funds from which petitioner was required to pay his divorce

obligations.  Petitioner was free to pay the ordered obligations from whatever sources he had available.  There is no mention of a qualified domestic relations order (QDRO) in the divorce judgment, nor any reference to making Ms. Bougas an alternate payee on petitioner's IRA.

In a June 27, 1997, divorce hearing held at the New Jersey court, the Honorable Milton H. Gelzer, J.S.C., suggested that petitioner withdraw pension funds to prevent foreclosure on the marital home, even though such withdrawal may be subject to an early withdrawal penalty.  There was no mention of a QDRO at the divorce hearing.

Sometime prior to the divorce, petitioner rolled over an amount from his 401(k) retirement plan at Salomon, Smith Barney into an IRA at Charles Schwab.  Because petitioner's resources were limited at the time he was required to pay the amounts ordered in the divorce judgment, he chose to take a distribution from his IRA.  Petitioner requested a distribution from his IRA in the amount of $250,000, without presenting the plan administrator with a copy of the divorce judgment.  Charles Schwab honored petitioner's request and distributed a check to petitioner in his name.  On March 20, 1998, petitioner deposited the $250,000 check into his personal checking account at Republic National Bank of New York (RNB).

On March 31, 1998, petitioner paid Ms. Bougas by personal

check the $150,000 ordered in the divorce judgment. On April 1, 1998, petitioner paid Ms. Bougas's $10,000 attorney's fee by check made payable to Frank Louis. By checks dated April 19 and 20, 1998, petitioner paid the various credit card companies for the debts incurred by Ms. Bougas. All the checks mentioned above were drawn against petitioner's personal checking account at RNB. No funds were transferred from petitioner's IRA directly to Ms. Bougas or any other party to satisfy the terms of the divorce judgment.

On his 1998 Federal income tax return, petitioner reported the $250,000 distribution from his IRA as income. However, petitioner did not report an additional tax of 10 percent of the total distribution for the early withdrawal from the IRA. Respondent determined in the notice of deficiency that petitioner is liable for the additional tax on an early distribution from a qualified retirement plan. Although admitting that a QDRO was never issued, petitioner asserts he is not liable for the additional tax on the early distribution because the divorce judgment and his actions meet the criteria of a QDRO within the spirit of the law.

## OPINION

We decide the deficiency issue in this case on the basis of the preponderance of the evidence in the record without regard to the burden of proof. Accordingly, we need not decide whether

section 7491(a)(1) is applicable in this case.  See <u>Higbee v. Commissioner</u>, 116 T.C. 438 (2001).

A "domestic relations order" is defined in pertinent part as any judgment which relates to the provision of marital property rights to a spouse, or former spouse, of a participant and is made pursuant to a State domestic relations law.  Sec. 414(p)(1)(B).  A QDRO is a specific type of domestic relations order which in pertinent part (1) creates an alternate payee's right to receive all or part of the benefits payable with respect to a participant under a plan, (2) clearly specifies certain facts, and (3) does not alter the amount of the benefits under the plan.  Sec. 414(p)(1)(A), (2), and (3).

Section 72(t) provides for an additional tax of 10 percent on any amount received as an early distribution from a qualified retirement plan.  A "qualified retirement plan" includes an IRA. See sec. 4974(c)(4).  The section 72(t) additional tax does not apply in certain situations, and the sole exception on which petitioner relies is section 72(t)(2)(C).  That section provides that distributions from qualified retirement plans are not subject to the additional tax if they are made to an alternate payee pursuant to a QDRO within the meaning of section 414(p)(1). Section 414(p)(8) defines the term "alternate payee" as any spouse, former spouse, child or other dependent of a participant who is recognized by a domestic relations order as having a right

to receive all, or a portion of, the benefits payable under a plan with respect to such participant.

To qualify for the section 72(t)(2)(C) exception to the additional tax the distribution must be made by the plan administrator to an alternate payee in response to a QDRO. Section 414(p) provides certain procedural rules with respect to domestic relations orders to provide guidance to plan administrators when making QDRO determinations. "Implicit in these procedural rules, and in their underlying purpose to provide rational rules to guide plan administrators, is the requirement that a domestic relations order be presented to the plan administrator and adjudged 'qualified' before any distribution is made by the plan to the spouse or former spouse." Rodoni v. Commissioner, 105 T.C. 29, 36 (1995).

The New Jersey court entered the divorce judgment with respect to petitioner and Ms. Bougas. The divorce judgment waived any right, title, or claim by Ms. Bougas to petitioner's IRA account. The divorce judgment relates to marital property rights of petitioner and Ms. Bougas pursuant to the domestic relations laws of New Jersey. The divorce judgment is therefore a domestic relations order under section 414(p)(1)(B).

However, the divorce judgment did not effectively create or recognize Ms. Bougas's right as an alternate payee to receive any portion of petitioner's IRA, nor did it award Ms. Bougas any

interest in petitioner's IRA. See sec. 414(p)(1)(A). Petitioner initiated, received, and controlled the distribution from his IRA, which funds he used to comply with the divorce judgment. Since petitioner was the plan participant and the distribution was made directly to him, petitioner was not an alternate payee. See sec. 414(p)(8). In addition, petitioner never submitted a copy of the divorce judgment to the plan administrator prior to requesting and receiving the distribution from the IRA. Therefore, the divorce judgment does not qualify as a QDRO under section 414(p).

Since petitioner is not an alternate payee and the section 414(p) requirements for a QDRO were not met, petitioner does not fall within the section 72(t)(2)(C) exception to the section 72(t) additional tax on an early distribution from a qualified retirement plan.

Perhaps realizing he may not prevail under the language of section 414(p), petitioner claims that the facts in this case indicate compliance with the QDRO provisions within the spirit of the law. Where the requirements of a statute relate to the substance or essence of the statute, they must be rigidly observed. Taylor v. Commissioner, 67 T.C. 1071, 1077 (1977); Sperapani v. Commissioner, 42 T.C. 308, 331 (1964). On the other hand, if the requirements are procedural or directory in that they do not go to the essence of the thing to be done, but rather

are given with a view to the orderly conduct of business, they may be fulfilled by substantial compliance. Taylor v. Commissioner, supra at 1077-1078; Sperapani v. Commissioner, supra at 330-331.

We need not address whether all the requirements of section 414(p) go to the essence of the statute or are merely procedural because we find that the divorce judgment and petitioner's actions fail to comply substantially with the QDRO requirements in section 414(p). See Rodoni v. Commissioner, supra at 39-40.

Petitioner never submitted a copy of the divorce judgment to the plan administrator for a determination, nor was he even required by the divorce judgment to pay the ordered obligations from his IRA. The divorce judgment fails to name Ms. Bougas as an alternate payee, fails to specify clearly an amount or percentage of petitioner's IRA that was to be paid by the plan to Ms. Bougas, and fails to create or recognize any rights of Ms. Bougas to receive any portion of petitioner's IRA. See sec. 414(p)(1) and (2). In direct conflict with the requirements of section 414(p), the divorce judgment explicitly states that the IRA is petitioner's sole and exclusive property, free and clear of any claims of Ms. Bougas. Clearly, the divorce judgment did not substantially comply with the section 414(p) QDRO requirements.

Petitioner further claims that he should not be penalized

for following the direction of the New Jersey court. Petitioner contends that the New Jersey court required him to make the IRA distributions to pay his divorce obligations. This same argument was rejected in Czepiel v. Commissioner, T.C. Memo. 1999-289, affd. without published opinion 86 AFTR 2d 2000-7304, 2000-1 USTC par. 50,134 (1st Cir. 2000). As in Czepiel, petitioner was not required to pay his divorce obligations from his IRA; petitioner chose to use the IRA because he had no other source of funds to pay his divorce obligations. Here, the IRA distribution was made voluntarily by petitioner, with his active participation and control, and not at the order of any court. See id.

Petitioner also blames the New Jersey court for not issuing a QDRO. However, the New Jersey court did not order petitioner to pay his divorce obligations from his IRA; the New Jersey court merely suggested during a divorce hearing that the IRA was a potential source to meet petitioner's obligations. Because the New Jersey court did not award Ms. Bougas any rights or interest in petitioner's IRA, there was no reason for that court to issue a QDRO. In addition, it does not appear from the record that petitioner or his attorney ever requested a QDRO.

Petitioner testified that he expressed concerns to his attorney about taking a distribution from his IRA, but he ultimately did as his attorney instructed. Petitioner further testified that had he "been aware there was such a thing as a

qualified domestic relations order, and that there would have been some type of a penalty, [he] most certainly would have requested [his] attorney to make sure that it was done in full compliance." Assuming petitioner was given inadequate advice by his counsel, this is not the proper forum for petitioner to seek redress for that alleged wrong. Estate of Quirk v. Commissioner, T.C. Memo. 1995-234.

On the record before the Court, we find that petitioner is liable for the 10-percent additional tax on the $250,000 early distribution from his IRA, pursuant to section 72(t).

To reflect the foregoing,

Decision will be entered for respondent.