T.C. Memo. 2003-294

UNITED STATES TAX COURT

RANDOLPH S. SIMPSON, I, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2832-01.                    Filed October 21, 2003.

Randolph S. Simpson I, pro se.

<u>Gordon P. Sanz</u>, for respondent.

MEMORANDUM OPINION

COUVILLION, <u>Special Trial Judge</u>: Respondent determined a deficiency of $4,453 in petitioner's Federal income tax for the year 1997. In an amendment to answer, respondent seeks to increase the deficiency by $5,012, for a total deficiency of $9,465.[1]

_____

[1]    Unless otherwise indicated, section references are to
                                          (continued...)

After a concession by petitioner,[2] the issues for decision are: (1) Whether petitioner is liable for the 10-percent additional tax on an early distribution from a qualified retirement plan under section 72(t)(1) for the year at issue, and (2) whether petitioner is entitled to deduct $17,900 paid to his former spouse during 1997 as alimony. The second issue arises out of respondent's amendment to answer. The undisputed facts in the record permit the Court to decide the issues without regard to the burden of proof.

Some of the facts were stipulated, and those facts, with the annexed exhibits, are so found and are incorporated herein by reference. At the time the petition was filed, petitioner's legal residence was Houston, Texas.

During the year at issue, petitioner was employed as a shuttle bus driver for Avis Rent-A-Car (Avis). From 1987 to 1996, according to petitioner, Avis established and maintained a qualified Employee Stock Ownership Plan (ESOP) in which petitioner was a participant. In 1996, the employees of Avis voted to sell their stock held in the ESOP to a private company.

---

[1](...continued)
the Internal Revenue Code in effect for the year at issue.

[2] Petitioner conceded an unreported $469 distribution from the Teachers Retirement System of Texas that was received during 1997, as well as the 10-percent addition to tax under sec. 72(t) attributable to that distribution.

As a result of the sale, petitioner received a lump-sum distribution from U.S. Trust Co. of California in October 1997. The amount of the distribution was $42,805.55, out of which 20 percent Federal income tax was withheld. Petitioner received a check in the net amount of $34,244.44 and was thereafter issued Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc. Petitioner was 47 years old at the time of the distribution.

At the time of the sale, petitioner was in the midst of a divorce proceeding with his wife, Lucille R. Simpson (Ms. Simpson). A Final Decree of Divorce (divorce decree) was decreed on November 7, 1997, by the District Court of Harris County, Texas. In the divorce decree, petitioner is also referred to as "petitioner" and his former wife, Ms. Simpson, is referred to as "respondent". The parties in this case agree that Texas is a community property State. The divorce decree provided: "The Court * * * finds that the parties have agreed to the terms of this Final Decree of Divorce and have stipulated that its terms and provisions are contractual."

Under the section of the divorce decree entitled "Division of Community Estate", petitioner was awarded as his sole and separate property:

Any and all sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to any profit-sharing plan, retirement plan, pension plan, employee stock option plan, employee savings plan, accrued unpaid bonuses, or other benefit program existing by reason of Petitioner's past or present employment.

The divorce decree contained a similar provision in favor of Ms. Simpson. The decree further awarded Ms. Simpson a money judgment of $17,900 to effect "a just and right division of the community estate." The divorce decree further provided, however, that the money judgment "is part of the division of the community estate between the parties and does not constitute, nor shall it be interpreted to be, any form of spousal support, alimony or child support." The payment of $17,900 by petitioner to his former spouse in satisfaction of the money judgment was acknowledged in the decree. To pay the money judgment to Ms. Simpson, petitioner used part of the proceeds he had received from the ESOP distribution.

On his 1997 Federal income tax return, petitioner claimed head-of-household filing status, reported $23,818 wage income, and claimed the standard deduction. On line 16a, Total pensions and annuities, petitioner reported $42,806 and reported the entire amount as taxable on line 16b, Taxable amount. On line 30a, Alimony paid, petitioner claimed an adjustment to income of $17,900 for alimony paid. No other income or adjustments were

reported, yielding an adjusted gross income of $48,724. Petitioner entered "-0-" on line 50, Tax on qualified retirement plans (including IRAs) and MSAs. He did not attach Form 5329, Additional Taxes on Qualified Plans (Including IRAs) and Other Tax-Favored Accounts, to his return.

In the notice of deficiency and accompanying explanations, respondent determined that the 10-percent additional tax under section 72(t) was due on the premature distribution from the United States Trust Co. of America. In the amendment to answer, respondent claims the $17,900 paid by petitioner to his former wife is not deductible as alimony.

The first issue is whether petitioner is liable for the 10-percent additional tax on the distribution from the qualified retirement plan under section 72(t)(1). Section 72(t) provides for a 10-percent additional tax on early distributions from qualified retirement plans, as follows:

> (1) Imposition of additional tax.--If any taxpayer receives any amount from a qualified retirement plan (as defined in section 4974(c)), the taxpayer's tax under this chapter for the taxable year in which such amount is received shall be increased by an amount equal to 10 percent of the portion of such amount which is includible in gross income.

The term "qualified retirement plan" includes any plan described in section 401(a), which includes qualified stock bonus plans such as the ESOP in which petitioner participated. Sec.

4974(c)(1). Petitioner does not dispute that he received a distribution from a qualified plan. However, he contends that his former wife should bear the burden of the 10-percent addition to tax with respect to the $17,900 payment he made to her under the divorce decree.

The 10-percent addition to tax does not apply to certain distributions, including those made "to an alternate payee pursuant to a qualified domestic relations order (within the meaning of section 414(p)(1))." Sec. 72(t)(2)(C). A "domestic relations order" is defined in pertinent part as any judgment that relates to the provision of marital property rights to a spouse, or former spouse, of a participant and is made pursuant to a State domestic relations law. Sec. 414(p)(1)(B). A qualified domestic relations order, or QDRO, is a specific type of domestic relations order that in pertinent part (1) creates an alternate payee's right to receive all or part of the benefits payable with respect to a participant under a plan, (2) clearly specifies certain facts, and (3) does not alter the amount of the benefits under the plan. Sec. 414(p)(1)(A), (2), and (3). Section 414(p)(8) defines the term "alternate payee" as any spouse, former spouse, child or other dependent of a participant who is recognized by a domestic relations order as having a right to receive all, or a portion of, the benefits payable under a plan with respect to such participant.

Although petitioner did not allege or contend that the $17,900 was paid pursuant to a QDRO, petitioner in any event does not qualify for the section 72(t)(2)(C) exception to the additional tax. Although the divorce decree is a domestic relations order, it is not a QDRO. Rather than recognizing an alternate payee with respect to petitioner's qualified plan, the decree divested Ms. Simpson of any rights to such property and deemed that property to be petitioner's sole and separate property. Sec. 414(p)(1)(A). Because no alternate payee was named in the divorce decree, the decree was not a QDRO.

Moreover, the distribution of funds from petitioner's qualified plan was not made to an alternate payee as required by section 72(t)(2)(C). By contrast, the funds were disbursed by the plan administrator directly to petitioner. The Court rejects petitioner's argument that, because he used funds received in the plan distribution to pay Ms. Simpson, she should be responsible for a proportionate share of the additional tax. Petitioner's argument ignores the definitional elements of alternate payee in section 414(p)(8), and he points to no legal authority to support his position. As previously noted, Ms. Simpson was not an alternate payee. Bougas v. Commissioner, T.C. Memo. 2003-194. Petitioner does not fall within the section 72(t)(2)(C) exception to the section 72(t) additional tax on an early distribution from a qualified retirement plan, nor does he contend that he

qualifies under any other exception.  He alone is responsible for the section 72(t) additional tax.  Respondent is sustained on this issue.

The second issue is whether petitioner is entitled to a deduction for the $17,900 paid to his former spouse during 1997 as alimony.  Amounts received as alimony or separate maintenance are includable in the recipient's gross income under sections 61(a)(8) and 71(a) and are deductible by the payor under section 215(a) in the year paid.  On the other hand, payments representing a property settlement are neither deductible to the payor nor includable in income by the recipient.  Sec. 1041.  For tax purposes, the term "alimony or separate maintenance payment" is defined in section 71(b)(1) as any payment in cash meeting the following four criteria:

> (A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,
>
> (B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,
>
> (C) in the case of an individual legally separated from his spouse under a decree of divorce or separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and
>
> (D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

Section 71 was amended by the Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 422(a), 98 Stat. 494, 795, to establish an objective standard to distinguish between a payment received in the division of property (which is not includable in gross income) and a payment received as spousal support (which is includable in gross income).  Hoover v. Commissioner, 102 F.3d 842, 845 (6th Cir. 1996), affg. T.C. Memo. 1995-183; H. Rept. 98-432 (Part II), at 1495 (1984) ("The committee bill attempts to define alimony in a way that would conform to general notions of what type of payments constitute alimony as distinguished from property settlements and to prevent the deduction of large, one-time lump-sum property settlements".).

In this case, the $17,900 payment petitioner made to Ms. Simpson in 1997 was a property settlement and not deductible alimony.  Although the transfer was made under a divorce or separation instrument, the payment was designated in the divorce decree as part of the division of the community estate between the parties.  The divorce decree specifically stated that the payment "does not constitute, nor shall it be interpreted to be, any form of spousal support, alimony, or child support."  In ascertaining the applicability of subparagraph (B) of section 71(b)(1), "the divorce or separation instrument need not mimic the statutory language of the subparagraph (e.g., the instrument need not specifically refer to sections 71 and 215)."  Estate of

Goldman v. Commissioner, 112 T.C. 317, 323 (1999), affd. sub nom.

Schutter v. Commissioner, 242 F.3d 390 (10th Cir. 2000).  Rather,

the divorce or separation instrument contains a nonalimony

designation if the substance of such a designation is reflected

in the instrument.  Id.  The Court finds that petitioner's

divorce decree contains a nonalimony designation within the

meaning of section 71(b)(1)(B).  Thus, petitioner's payment of

$17,900 to Ms. Simpson was not alimony but rather a property

settlement between the spouses.  Respondent is sustained on this

issue.

Decision will be entered

for respondent.