T.C. Summary Opinion 2006-50

UNITED STATES TAX COURT

ROBERT E. AND LORI K. REICHNER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2211-05S.                Filed April 11, 2006.

Robert E. and Lori K. Reichner, pro sese.

<u>Robert W. Dillard</u>, for respondent.


PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency of $7,070 in petitioners' 2002 Federal income tax. After concessions,[1] the issues for decision are: (1) Whether petitioners must include in gross income $12,000 of a $25,100 distribution they received from petitioner husband's retirement plan,[2] and (2) to the extent the $12,000 is included in gross income, whether petitioners are entitled to an alimony deduction for payments made to petitioner husband's former wife.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts, supplemental stipulation of facts, and the attached exhibits are incorporated herein by this reference. Petitioners resided in Belleview, Florida, at the time they filed their petition. Unless otherwise indicated, all references to petitioner are to Robert Reichner.

Petitioner and Gloria Reichner (Ms. Reichner) were married on November 7, 1970. During their marriage, petitioner contributed to a retirement plan maintained by his employer, Delta Airlines (the Delta plan). Petitioner and Ms. Reichner were divorced on March 28, 2000, pursuant to a divorce decree

---

[1] Respondent concedes that petitioners are not liable for an additional tax of $3,941 on distributions they received from one or more qualified retirement plans.

[2] Petitioners do not dispute that the remaining $13,100 of the distribution is included in gross income.

issued by the Superior Court of Carroll County, Georgia (the State court).[3]  The decree provides in part:

3. PROPERTY SETTLEMENT

    3.(A) RETIREMENT-PENSION - The husband shall pay to the Wife as property settlement [sic] from his retirement pension check the amount of $1000.00 per month on the 30th of each and every month beginning March 30 2000 [sic] from the Delta Airlines benefit check.  * * *  This monthly payment * * * shall be paid through a wage attachment from * * * [petitioner's] retirement check.  * * * [Petitioner] is ordered to sign the necessary documents allowing Delta to take out the monies * * * from his monthly benefits check.

The decree also provides that petitioner and Ms. Reichner "specifically agree to waive, renounce and relinquish, now and forever, any and all rights or claims either may have to alimony from the other party."

The record does not indicate whether petitioner signed the "necessary documents" to permit the wage attachment.  For more than 2 years after the divorce, however, the Delta plan did not make direct payments to Ms. Reichner.  Instead, the Delta plan paid retirement benefits to petitioner, who in turn mailed a $1,000 check to Ms. Reichner each month.

In May 2002, the State court issued a stipulated order that was incorporated into the divorce decree (the stipulated order). The stipulated order states that it is intended to be a "Qualified Domestic Relations Order" (QDRO) as defined in section

---

[3] The decree was issued in July 2000 nunc pro tunc Mar. 28, 2000.

414(p), and designates Ms. Reichner as an "Alternate Payee" of the Delta plan. It directs the Delta plan to make monthly payments of $1,000 to Ms. Reichner once the plan administrator has determined that the stipulated order is a QDRO. It also provides that the "Alternate Payee shall include all retirement benefits received by her pursuant to this Order as and when received by her in her gross income and * * * [petitioner] need not do so."

It is not clear when Ms. Reichner provided a copy of the stipulated order to the Delta plan administrator, although petitioner believed it was sometime after he moved to Florida in September 2002. Canceled checks written by petitioner indicate he sent Ms. Reichner monthly payments at least through November of that year. Petitioner was unsure when he stopped sending checks to Ms. Reichner but believed it was "probably" in December, at which time the Delta plan began paying her directly.

The Delta plan issued a Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., to petitioner for the taxable year 2002 showing a $25,100 gross distribution, all of which was taxable. Petitioners reported the distribution as gross income on their joint Federal income tax return, but they claimed a $12,000 alimony deduction for the monthly payments made to Ms. Reichner.

In the notice of deficiency, respondent determined the payments were not alimony and therefore disallowed the claimed deduction.[4]  Respondent indicated he also issued a notice of deficiency to Ms. Reichner for the taxable year 2002.  Although that notice of deficiency was not made part of the record, respondent contends that Ms. Reichner did not report the $12,000 of monthly payments she received as gross income.  Respondent determined that the payments she received were alimony and therefore includable in her gross income.  Ms. Reichner did not petition the Tax Court for a redetermination.

## Discussion

In general, the Commissioner's determinations set forth in a notice of deficiency are presumed correct, and the taxpayer bears the burden of showing that the determinations are in error.  Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).  Pursuant to section 7491(a), the burden of proof as to factual matters shifts to respondent under certain circumstances.  Furthermore, if a taxpayer asserts a reasonable dispute with respect to the income reported on an information return and fully cooperates

---

[4] Respondent was unaware of the stipulated order until shortly before trial.  As a result, the notice of deficiency does not address whether, because of the stipulated order, a portion of the $12,000 was excludable from petitioners' gross income.  At the end of trial, the Court kept the record open to allow petitioners to produce a copy of the stipulated order.  When the document was received as part of a supplemental stipulation of facts, the Court admitted the document into evidence and closed the record.

with the Commissioner (including providing access to an inspection of all witnesses, information, and documents within the control of the taxpayer as reasonably requested by the Commissioner), then the Commissioner shall have the burden of producing reasonable and probative information in addition to such information return. Sec. 6201(d); Tanner v. Commissioner, 117 T.C. 237 (2001), affd. 65 Fed. Appx. 508 (5th Cir. 2003); McQuatters v. Commissioner, T.C. Memo. 1998-88.

With respect to whether the $12,000 is includable in petitioners' gross income, petitioners did not raise this issue until trial; therefore, they did not satisfy the requirements of section 7491(a)(2) (complied with requirements to substantiate any item and maintained records required and cooperated with reasonable requests for information, documents, etc.), and the burden of proof remains with petitioners. With respect to whether the monthly payments are deductible as alimony, the facts are not in dispute; therefore, we decide this issue without regard to the burden of proof.

Although petitioners did not raise the issue, we note that the Commissioner is allowed to make inconsistent determinations against former spouses in order to protect the revenue in a "whipsaw" situation. See Doggett v. Commissioner, 66 T.C. 101, 103 (1976); Smith v. Commissioner, T.C. Memo. 1996-292. Inconsistent notices of deficiency do not negate the presumption

of correctness as to either notice.  Smith v. Commissioner,
supra; INI, Inc. v. Commissioner, T.C. Memo. 1995-112, affd.
without published opinion 107 F.3d 27 (11th Cir. 1997).

1.  Whether Petitioners Must Include the $12,000 in Gross Income

In general, a distribution from a qualified retirement plan[5]
is taxable to the distributee under section 72 (relating to
annuities).  Sec. 402(a); Darby v. Commissioner, 97 T.C. 51, 57
(1991).  Neither the Code nor the regulations define the term
"distributee".  This Court has concluded, however, that the term
ordinarily means the participant or beneficiary who, under the
plan, is entitled to receive the distribution.  Darby v.
Commissioner, supra at 58; Seidel v. Commissioner, T.C. Memo.
2005-67.

Section 402(e)(1)(A) provides an exception to the general
rule of section 402(a).  It provides that the "spouse or former
spouse" of the plan participant who receives "any distribution or
payment made * * * under a qualified domestic relations order (as
defined in section 414(p))" shall be considered an "alternate
payee" and taxed on such distribution or payments as the
distributee.  Sec. 402(e)(1)(A); Darby v. Commissioner, supra at

---

[5] Although the parties did not address the qualified status
of the Delta plan, there is nothing in the record that would lead
us to believe that the employees' trust is not described in sec.
401(a) and not exempt from tax under sec. 501(a).

58-59; <u>Seidel v. Commissioner</u>, <u>supra</u>; see also sec. 414(p)(8) (defining "alternate payee").

As is relevant here, a domestic relations order is any judgment, decree, or order that relates to the provision of alimony payments or marital property rights to a spouse or former spouse and is made pursuant to a State domestic relations law. Sec. 414(p)(1)(B).  A QDRO is a specific type of domestic relations order that (1) creates, recognizes, or assigns an alternate payee's right to receive all or part of the benefits payable with respect to a participant under a plan, (2) clearly specifies certain facts,[6] and (3) does not alter the amount of the benefits under the plan.  Sec. 414(p)(1)-(3); <u>Simpson v. Commissioner</u>, T.C. Memo. 2003-294.

The stipulated order is a domestic relations order because it relates to petitioner's provision of marital property rights to Ms. Reichner and was made pursuant to Georgia State law.  It is a QDRO because it recognizes Ms. Reichner's right to receive a portion of petitioner's retirement plan benefits, clearly specifies the necessary facts, and states that it shall not be construed as altering the benefits available under the Delta plan.

---

[6] Such facts are:  (A) The last known mailing address of each party; (B) the amount of the participant's benefits to be paid to the alternate payee; (C) the period to which the order applies; and (D) the plan to which the order applies.  Sec. 414(p)(2)(A)-(D).

The question remains whether Ms. Reichner received any distributions "under" the QDRO. See sec. 402(e)(1)(A). Section 414(p) provides certain procedural rules with respect to domestic relations orders. Sec. 414(p)(6) and (7); Rodoni v. Commissioner, 105 T.C. 29, 36 (1995). "Implicit in these procedural rules * * * is the requirement that a domestic relations order be presented to the plan administrator and adjudged 'qualified' before any distribution is made by the plan to the spouse or former spouse." Rodoni v. Commissioner, supra; see also Bougas v. Commissioner, T.C. Memo. 2003-194 (distribution from a plan was not made under a QDRO where taxpayer failed to submit the domestic relations order to the plan administrator for approval).

The stipulated order does not have a date stamp or other notation indicating when it was adjudged qualified. Nevertheless, it appears the determination was made, at the earliest, in December 2002. The stipulated order provides that the Delta plan shall make direct payments to Ms. Reichner "as soon as administratively possible" after the order is adjudged qualified. Petitioner continued to send Ms. Reichner $1,000 monthly checks through at least November 2002. The fact that the Delta plan made no direct payments to Ms. Reichner before December indicates the stipulated order had not been adjudged qualified before that time. Accordingly, we conclude that the

monthly payments Ms. Reichner received from January through November 2002 were not made under the QDRO.

The monthly payment for December 2002 presents a closer question. Petitioner believed he "probably" stopped sending Ms. Reichner checks in December 2002 but admitted he was not sure. The absence of a canceled check for that month is circumstantial evidence that the Delta plan had begun making distributions to Ms. Reichner under the QDRO. Petitioner testified, however, that he had lost some of his canceled checks either when he moved or when he suffered a house fire. Furthermore, petitioner reported the entire $12,000 as gross income and claimed a $12,000 deduction. Had petitioner stopped making payments after November, one would have expected him to report only $11,000 as gross income and claim an $11,000 deduction. In sum, considering petitioner's equivocal testimony, the position he took in the tax return, and the lack of direct evidence, we find that Ms. Reichner did not receive a distribution from the Delta plan in December 2002. We therefore conclude that petitioner is the distributee of the $12,000 at issue, which amount is taxable to him under section 72. See sec. 402(a).

Amounts received under section 72 generally are includable in gross income. Sec. 72(a). Although section 72 provides exceptions to this rule, nothing in the record indicates that

petitioner satisfies any such exception.  Accordingly, we conclude that the $12,000 is includable in his gross income.

2.  <u>Whether Petitioners Are Entitled to an Alimony Deduction</u>

The Federal tax consequences of a payment made incident to divorce depend upon the characterization of such payment. Property settlements, or equitable divisions of marital property, generally are neither deductible from the income of the paying spouse nor includable in the income of the receiving spouse. Sec. 1041; <u>Estate of Goldman v. Commissioner</u>, 112 T.C. 317, 322 (1999), affd. without published opinion sub nom. <u>Schutter v. Commissioner</u>, 242 F.3d 390 (10th Cir. 2000).  On the other hand, payments made or received as alimony generally are deductible by the paying spouse under section 215(a) and includable in gross income by the receiving spouse under sections 61(a)(8) and 71.

Section 215(b) provides that the paying spouse may deduct a payment as alimony if the payment is "includible in the gross income of the recipient under section 71."  Section 71(b)(1) defines an alimony payment as any cash payment meeting each of the following four criteria:

(A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,

(B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,

(C) in the case of an individual legally separated from his spouse under a decree of divorce or of

separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and

(D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

Respondent contends that petitioner fails to satisfy subparagraph (B) of section 71(b)(1) because the divorce decree designates the $1,000 monthly payments as not includable in Ms. Reichner's gross income and not allowable as a deduction under section 215. A divorce or separation instrument "contains a nonalimony designation if the substance of such a designation is reflected in the instrument." Estate of Goldman v. Commissioner, supra at 323. Generally, the divorce or separation agreement must provide a "clear, explicit and express direction" that the payments are not to be treated as alimony, but the designation need not mimic the statutory language of sections 71 and 215. Richardson v. Commissioner, 125 F.3d 551, 556 (7th Cir.1997), affg. T.C. Memo. 1995-554; Estate of Goldman v. Commissioner, supra at 323.

In this case, the divorce decree unambiguously designates the payments from petitioner's retirement benefits as nonalimony. It provides that the payments are to be made "as [a] property settlement" and that the "parties specifically agree to waive, renounce and relinquish * * * any and all rights or claims either

may have to alimony from the other party". We conclude that the divorce decree clearly, explicitly, and expressly designates the payments from petitioner's retirement benefits as nonalimony payments. Accordingly, petitioners are not entitled to an alimony deduction. Respondent's determination is sustained.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

Decision will be entered

under Rule 155.